**UNITED STATES of America**

v.

**Virgil ALESSI, Defendant.**

**No. S75 Cr. 772.**

United States District Court, S. D. New York.

April 6, 1976.

MEMORANDUM

BONSAL, District Judge.

In an indictment filed August 4, 1975, (S75 Cr. 772), defendant Virgil Alessi is charged in five substantive counts with the transportation, distribution and possession of large amounts of heroin in violation of 21 U.S.C. §§ 173, 174, 841(a)(1), 841(b)(1)(A) and 18 U.S.C. § 2. Alessi is also named as an unindicted co-conspirator in Count 1 of the indictment which charges Lawrence Iarossi and 12 others with a conspiracy to violate the federal narcotics laws between January 1, 1968 and June 1973.

In November 1975, Alessi moved to dismiss the indictment against him on the ground that the prosecution would amount to a denial of due process for the reason that it would violate the terms of a plea-bargain agreement with the U. S. Attorney's Office in the Eastern District of New York under which he pled guilty on October 2, 1972 to an Information charging a conspiracy to violate the narcotics laws between April 1, 1969 and December 18, 1971. According to Alessi, the plea-bargain agreement provided that Alessi would not be prosecuted with respect to any overt acts committed during the course of the Eastern District conspiracy which might constitute a substantive violation of the narcotics laws. Alessi contends that the present indictment violates the plea-bargain agreement and that his prosecution would therefore amount to a denial of due process.

In an Endorsement filed December 29, 1975, this Court reserved decision on Alessi's motion to dismiss the indictment until the conclusion of the trial, on the ground that the evidence at trial might be of help in determining whether the matters set forth in the indictment were included in Alessi's alleged plea-bargain agreement and whether the evidence demonstrates that Alessi is entitled to claim double jeopardy.

Alessi appealed, and on January 19, 1976, the day before the trial was to commence, the Court of Appeals heard oral argument and in a ruling from the bench treated Alessi's application as a petition for a writ

Robert B. Fiske, Jr., U. S. Atty., S. D. N. Y., New York City, for United States; James P. Lavin, Asst. U. S. Atty., New York City, of counsel.

Nancy Rosner, New York City, for defendant.

of mandamus.[1] The Court of Appeals directed that the district court either conduct an evidentiary hearing before trial to decide whether the further prosecution of Alessi would deny him due process because it would violate the terms of the 1972 plea-bargain agreement, or grant a severance of Alessi and proceed to trial with the other defendants and decide Alessi's motion at a later date.

On January 19, 1976, Alessi was severed and the trial of the remaining seven defendants commenced on January 21, 1976.[2] (Hereinafter referred to as the "*Iarossi*" trial).

The Court held an evidentiary hearing on Alessi's motion on February 11, 1976, at which Alessi and the Government stipulated that they would rely on the record made of an evidentiary hearing on similar issues in the case of *United States v. Papa, et al.,* 74 Cr. 1082, conducted by Judge Brieant on January 16, 1975,[3] and on the record made at a hearing on Indictment 75 Cr. 687 before Judge Judd in the Eastern District on October 17, 1975. Both parties stated that they would file supplemental memoranda of law.

Alessi's position is that the plea-bargain agreement worked out between Vincent Papa, Alessi's co-conspirator in the Eastern District indictment, and Special Strike Force Attorney James O. Druker extended equally to Alessi, and that he pled guilty to Information 72 Cr. 1133 in the Eastern District in reliance on the promises and representations made by Druker, so that the Government is estopped from proceeding to trial on the present indictment.

On the other hand, the Government contends that Druker's promises in the plea-bargain agreement with Papa did not ex-

tend to Alessi, that Alessi did not plead guilty to the Information in reliance on such promises and, in any event, that the plea-bargain agreement in the Eastern District did not cover the indictment in the Southern District of New York. Furthermore, the Government contends that Alessi's alleged narcotics violations in Counts 5, 7, 15, 16 and 17 of the Southern District indictment are separate and apart from the Eastern District conspiracy.

It appears that the major issues raised by Alessi's motion are, first, the scope and extent of the 1972 plea-bargain agreement, and second, the makeup of the two alleged conspiracies, one being the conspiracy in the Eastern District Indictment 72 Cr. 473 and the other being the conspiracy covered in the Southern District Indictment 75 Cr. 772. Alessi's claim of double jeopardy rests, in part, upon his contention that the two conspiracies charged in the two separate indictments are one and the same; that the substantive counts in the Southern District indictment in which he is named arise out of overt acts in the Eastern District indictment; and that prosecution on the present indictment would be a violation of his constitutional rights.

In view of the stipulation of the parties at the evidentiary hearing, the record before the Court consists of the two indictments, sworn affidavits from Assistant United States Attorneys, memoranda of law, the record of the evidentiary hearing before Judge Brieant on January 16, 1975, the record of the hearing before Judge Judd on October 17, 1975, and the evidence produced at the *Iarossi* trial.

### The Eastern District Conspiracy

On January 24, 1972, Indictment 72 Cr. 88 was filed in the Eastern District charging

---

1. The Court of Appeals issued a written opinion on January 20, 1976 *United States v. Alessi,* 538 F.2d 314.

2. The trial of Lawrence Iarossi, James Panbianco, Leonard Rizzo, Renato Croce, Patsy Anatala, Snider Blanchard and Charles Brooks began before this Court and a jury on January 21, 1976. On February 6, 1976, the jury returned a verdict of guilty as to all defendants on the

conspiracy count (Count 1) and a verdict of guilty as to individual defendants on substantive counts 4, 8, 9, 10, 11, 12, 13, 14, 20, 21, 22 and 23.

3. Judge Brieant deferred decision on Papa's motion to dismiss the indictment under double jeopardy and due process grounds until the conclusion of the trial.

Alessi, Vincent Papa, Anthony Passero, Anthony Loria and others with conspiracy to violate the federal narcotics laws between April 1, 1967 and August 6, 1971. This indictment was obtained almost entirely upon the grand jury testimony of Angelo Paradiso.

Then, on April 17, 1972, Indictment 72 Cr. 433 was filed in the Eastern District naming Papa, Alessi, Rocco Evangelista, Danny Ranieri and others unknown to the grand jury as defendants and charging them with conspiracy to violate the federal narcotics laws from March 1, 1971 through December 18, 1971. This indictment was returned on the basis of the testimony of Stanton Garland.

Finally, on May 1, 1972, Indictment 72 Cr. 473 was filed in the Eastern District consolidating the two previous indictments. This indictment charged Alessi, Papa, Passero, Anthony Loria, Frank D'Amato,[4] William Huff and 16 others with conspiracy to violate the federal narcotics laws through the transportation, concealment, distribution and sale of heroin between April 1, 1967 and December 18, 1971. In addition, Alessi, Papa, Passero, Loria and D'Amato were charged with engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848. It appears that Alessi, Papa, Passero, Loria and D'Amato were the supervisors or managers of the criminal enterprise and that the other defendants were distributors.

### The Southern District Conspiracy

On February 21, 1975, Indictment 75 Cr. 170 was filed in the Southern District charging Anthony Manfredonia, Lawrence Iarossi and seven others with conspiracy to violate the federal narcotics laws from January 1, 1968 through the date of the filing of the indictment. Also named as co-conspirators but not named as defendants were Anthony Loria, Louis Inglese, Charles Simmons and Richard Diamond.

Then, on August 4, 1975, the present Indictment, 75 Cr. 775, was filed superseding Indictment 75 Cr. 170. The superseding indictment charges Anthony Passero, John D'Amato, Lawrence Iarossi, and 10 others with conspiracy to violate the federal narcotics laws and certain substantive violations thereof between January 1, 1968 and June 1973. Virgil Alessi, Vincent Papa, Anthony Loria, Anthony Manfredonia, Louis Inglese, Thomas Murray, Frank Pugliese, Frank D'Amato, Charles Simmons, Richard Diamond, Alvin Clark and Mary Mobley are named as co-conspirators but not as defendants. Alessi is named as a defendant in five substantive counts.

From the evidence introduced at the *Iarossi* trial it appears that Anthony Manfredonia and Lawrence Iarossi were partners in the heroin business from 1967 through the early part of 1970, that they distributed heroin to customers in the Bronx, Baltimore, Md., and Pittsburgh, Pa., (*U. S. v. Iarossi, et al.,* 75 Cr. 772, Transcript at 401), and that they would obtain heroin from Vincent Papa and Anthony Passero at the Astoria Colts Club on Ditmars Boulevard in Queens. (Tr. at 391, 399).

Later, it appears that Manfredonia and Joseph Barone became the core members of the alleged conspiracy (the "Bronx" group) (Tr. at 430), that they would obtain heroin from Alessi, Papa, Passero and Frank D'Amato, (the "Queens" group) (Tr. at 432–33, 441–42), and in turn pass it on to their customers for ultimate distribution. The core members would occasionally obtain heroin from alternate sources of supply: namely, James Panebianco, Graziano Rizzo and Leonard Rizzo. Throughout the course of the trial, however, the record bears out the fact that the Bronx group had little contact with the Queens group except as a source of supply of heroin.

### The Double Jeopardy-Claim

Alessi's claim of double jeopardy arises from his contention that the conspiracies alleged in the Eastern and Southern Dis-

---

4. The defendant's last name appears as "DiAmatto" in the Eastern District indictment and as "D'Amato" in the Southern District indictment although the record indicates that the two names refer to the same person.

trict indictments are the same and are covered by the plea-bargain agreement, and that the substantive counts in the Southern District indictment arise out of overt acts charged in the Eastern District indictment.

In *United States v. Mallah*, 503 F.2d 971 (2d Cir. 1974), *cert. denied*, 420 U.S. 995, 95 S.Ct. 1425, 43 L.Ed.2d 671 (1975), the Court of Appeals reviewed the factors relevant to a determination of whether two allegedly separate conspiracies are, in fact, but one, including such key factors as the " 'principals, the source of their drugs, the means and places of importation, their distribution points, and the centers from which they operated . . .' ". *United States v. Mallah, supra*, at 986 *citing United States v. Aviles*, 274 F.2d 179, 194 (2d Cir.), *cert. denied*, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960).

In the Southern District indictment, the principals appear to be Manfredonia, Iarossi and Barone while Alessi, Papa, Passero and Frank D'Amato appear to be the principals in the Eastern District indictment. Although Alessi, Papa, Passero and D'Amato acted as the source of supply for the Bronx group, the two groups operated out of separate centers and employed different foot soldiers with the exception of William Huff who was a foot soldier common to both groups.

While the limited evidence indicates that Alessi, Papa, Passero and D'Amato received their heroin from a common stash in Queens, and that some of the heroin from this stash may have later been distributed to Manfredonia, Iarossi, and Barone, (Tr. at 792–96, 798, 805–07), this fact alone is not determinative of the question at hand. Persons operating a common stash may in fact be distributing the heroin to several groups without these secondary groups being part of the same conspiracy. These questions and others similar to it were discussed in *United States v. Bertolotti, et al.*, 529 F.2d 149 (1975).

Here, there is no evidence that the Eastern District operation and the Southern District operation were linked together by any mutual dependence and assistance or that the members were aware of their part in a larger organization. *See United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975), *cert. denied*, 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Bynum*, 485 F.2d 490 (2d Cir. 1973), *vacated and remanded on other grounds*, 417 U.S. 903, 94 S.Ct. 2598, 41 L.Ed.2d 209 (1974). The record in the *Iarossi* trial establishes no more than that Manfredonia, and perhaps Iarossi and Barone, did business with Alessi as a supplier of heroin for distribution in the Bronx, Pittsburgh, Pa., and Baltimore, Md. While the Eastern and Southern District conspiracies were alleged to have commenced around the same time, the two operated in different locations and with separate personnel. "Unlike the situation in *Mallah*, there is nothing here to suggest that one conspiracy was a part of the other, nothing to suggest that 'others to the Grand Jury unknown' masked an overlap of personnel, and nothing to suggest that the success of one was in any way dependent upon or related to the other." *United States v. Papa*, 533 F.2d 815 (1976). Moreover, the mere fact that Anthony Passero and William Huff are named as defendants in both indictments is not a sufficient connection to link two otherwise independent transactions or organizations into one conspiracy. *Kotteakos v. United States*, 328 U.S. 750, 773–74, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). To do so would be to ignore the recent warning of the Court of Appeals in *United States v. Sperling*, 506 F.2d 1323 (2d Cir. 1974), *cert. denied*, 420 U.S. 962, 95 S.Ct. 1351, 43 L.Ed.2d 439 (1975):

" . . . [I]t has become all too common for the government to bring indictments against a dozen or more defendants and endeavor to force as many of them as possible to trial in the same proceeding on the claim of a single conspiracy when the criminal acts could be more reasonably regarded as two or more conspiracies, perhaps with a link at the top." *id.* at 1340–41.

For the foregoing reasons, the Court finds the Eastern District and Southern District indictments allege separate

conspiracies; therefore, Alessi's due process rights are not violated by the prosecution of substantive violations in the Southern District indictment. "[S]eparate indictments on substantive counts are always available, without double jeopardy problems." *United States v. Mallah, supra* at 987.

### The Eastern District Plea-Bargain Agreement

Alessi contends that the plea-bargain agreement between Vincent Papa and Special Strike Force Attorney James Druker extends equally to him and that the agreement provides there will be no further prosecution for any overt act encompassed within the Eastern District Indictment, 72 Cr. 473. Alessi now contends that the substantive counts in the Southern District Indictment, 75 Cr. 772, arise out of the overt acts in the Eastern District conspiracy and that the Government has broken its plea-bargain agreement with the filing of the indictment.

The details of the plea-bargain agreement were explored in detail in an evidentiary hearing before Judge Brieant on January 16, 1975 and, in a Memorandum and Order dated April 4, 1975, Judge Brieant concluded that a subsequent indictment filed in the Southern District naming Papa and alleging a separate conspiracy was not barred by the Eastern District plea-bargain agreement. *United States v. Papa, et al.,* S74 Cr. 1082 (Memorandum and Order dated April 4, 1975 at 25–36).

On April 2, 1976, the Court of Appeals affirmed Judge Brieant, holding, as did Judge Brieant, " ' . . . that Mr. Druker's representations to Mr. Papa's attorneys did not include the independent investigation undertaken two years later in this [the Southern] District, culminating in the present indictment,' " and that the plea-bargain agreement in the Eastern District did not extend to crimes in the Southern District. *United States v. Papa,* 533 F.2d 815 (1976).

Before the Court of Appeals' decision in *Papa,* Alessi contended that Papa's plea-bargain agreement applied equally to him.

In view of the decision of the Court of Appeals in *Papa,* and finding that the conspiracy alleged in the Southern District indictment is separate from that alleged in the Eastern District indictment, the plea-bargain agreement in the Eastern District does not bar the Government from proceeding against Alessi under Indictment S75 Cr. 772.

Accordingly, Alessi's motion to dismiss the indictment is denied.

It is so ordered.